**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emma Flippen,<br><br>      Plaintiff,<br><br>vs.<br><br>Ashland Arms, LLC, an Arizona limited liability company, dba Friendship Inn Motel,<br><br>      Defendant. | No. CV08-630-PHX-NVW<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Plaintiff Emma Flippen brought suit against Ashland Arms LLC ("Ashland Arms") alleging race discrimination in an employment contract and unlawful retaliation under 42 U.S.C. § 1981. (Doc. # 38.) Ashland Arms moved for dismissal as a sanction for discovery abuses by Flippen. (Doc. # 53). An evidentiary hearing on this motion took place on April 22, 2009. For the reasons explained in the following findings of fact and conclusions of law, the motion will be granted and the complaint dismissed.

**I.    Findings of Fact**

      **A.    The Allegations**

According to the allegations, Ashland Arms owns and operates a motel in downtown Phoenix called the Friendship Inn Motel ("Friendship Inn"). Emma Flippen was hired by Ashland Arms to work at the Friendship Inn as a desk clerk. Her immediate supervisor was Chris Burkhead, a white male who worked as a local motel manager for Ashland.

In her complaint, Flippen describes reprehensible behavior on the part of Burkhead. Flippen alleges that Burkhead abused her with racial slurs, physical aggression, and discriminatory working conditions. Burkhead fired Flippen in 2004, allegedly in retaliation for her complaints. According to Flippen, she was the only black motel employee at virtually all relevant times and she was the only victim of the abusive policies and behaviors. Flippen claims that she reported these problems to two other supervisors and no action was taken.

Ashland Arms disputes these instances of alleged discrimination. In opposition to Flippen's motion for summary judgment, various Ashland Arms employees submitted affidavits in which they deny Flippen's specific allegations of race discrimination. William Dudley, a coworker who regularly observed interactions between Burkhead and Flippen, states in his declaration that he never observed any of the alleged abuse. He denied that there was anything unique about Flippen's working conditions; a restriction on using the manager's kitchen applied to all employees alike. Other declarations indicate that Flippen never reported problems to her supervisors. A police report relating to a physical altercation between Flippen and Burkhead indicates nothing about racial bias. According to the affidavits, Flippen was terminated for excessive personal use of the phone, interfering with the work of other employees, and hosting personal visitors at work, all of which violated company rules.

Flippen then brought this action alleging unlawful employment discrimination and retaliation. After the commencement of discovery, Ashland Arms moved for dismissal with prejudice on grounds of alleged misconduct by Flippen. Specifically, Ashland Arms contends that Flippen brought her case under an assumed name and gave misleading sworn responses to an interrogatory and deposition question relating to her criminal history and identity.

### B. The Answer to Interrogatories

During discovery, Ashland Arms submitted a set of written interrogatories to Flippen. First among these interrogatories appeared the following question: "Have you ever been arrested, charged with, or convicted of a crime?" Flippen answered, "No." This answer was verified under penalty of perjury, bearing both the signature of Flippen and her attorney. It was dated August 12, 2008.

Subsequently, Ashland Arms discovered that this answer was false. Almost two years before, on October 31, 2006, a warrant had issued for the arrest of "Elmira Jones aka Emma Flippen" to answer an indictment for theft of government property. The charge arose out of the wrongful collection of social security disability benefits. Flippen had received benefits after suffering a stroke in 1997, claiming that she was confined to a wheelchair, unable to work. She continued to receive benefits without informing the Social Security Administration that she had returned to work under a different name and social security number. Flippen was arrested and pled guilty to the charge. She was sentenced to probation and ordered to pay restitution on July 7, 2008. Her plea agreement contained a standard acknowledgment of guilt. The presentence report states, "Ms. Flippen is remorseful for having committed this offense and does not wish to make excuses for the theft. She used the disability checks to supplement her low income. She knew that it was wrong and is ashamed of her conduct." The report also states that Flippen was hysterical following her arrest and consequently hospitalized for an evaluation. Flippen was represented by an attorney in the criminal proceeding.

At the time she was sentenced, Flippen was 63 years old. She had a third- or fourth-grade education and had begun attending literacy classes. During testimony in this case, she expressed confusion regarding the meaning of legal terms such as "interrogatory" and "misdemeanor." According to the 2008 presentence report, Flippen's only other criminal history was an unspecified misdemeanor conviction without any sentence of probation or incarceration. That conviction had taken place 24 years before.

Some of the facts presented are insufficient to support a finding that Flippen wilfully submitted a false answer to interrogatories. For example, the Court gives no weight to Ashland Arms's claim that Flippen has prosecuted this case under a false name. Flippen's given name as it appears on her birth certificate is Emma Elmira Flippen. She has used various names over the years, including the last name Jones, primarily because of changes in marital status. Her usage of the name "Emma Flippen" in this case is consistent with good faith and does not suggest wrongdoing. Similarly, it is unsurprising that a woman of such limited education would forget or misremember the events and significance of events that are 24 years in the past, particularly where she suffered a stroke in the intervening years. Therefore, the Court finds that Flippen did not wilfully misrepresent her criminal history with respect to the 24 year-old misdemeanor conviction that resulted in no probation or incarceration. The Court gives no weight to the showing that Ashland Arms has been unable to locate some of the witnesses identified by Flippen.

As to the more recent criminal proceedings, however, the Court finds that Flippen's failure to submit a correct answer to the interrogatory was willful and in bad faith. Only two weeks before she answered the interrogatory, Flippen was sentenced to probation for theft of more than $1,000 in government property, a crime punishable by up to ten years in prison and a $250,000 fine. 18 U.S.C. § 641. The evidence also shows that Flippen was so traumatized by her initial arrest that she required hospitalization. In her live testimony, Flippen offered no persuasive explanation for her failure to recount these events, claiming only that she thought the answer was "no" because she thought the word "convicted" referred to incarceration. In isolation, it is very plausible to suppose that a woman with a third- or fourth-grade education would confuse the meaning of "convicted" with "incarcerated." In the context of this case, however, there are significant indicia of willful bad faith besides.

Flippen may have little formal education, but she has over sixty years of life experience. To people of all ages and education levels, the significance of an arrest is unmistakable. The attending physical restraint and portent of criminal proceedings are not

- 4 -

things lightly undergone; our Constitutional prohibition against unreasonable seizures runs directly to this human sensitivity. Flippen's extreme emotional response to her arrest betrays her awareness of the circumstances. As a direct result of the arrest, Flippen pled guilty to theft charges in federal court and accepted responsibility for her actions. Whether or not she was confused about the meaning of the word "convicted," she offers no explanation as to why she did not consider herself to have ever been "arrested" or "charged with a crime."

Moreover, Flippen possessed a significant motive to falsify her response in this case. Flippen's evidence of discrimination consists almost entirely of her personal recollection. Any proof of liability would require her to take the stand and relate her version of events. At the same time, Ashland Arms plans to present witnesses who deny the essential points of Flippen's complaint: her mistreatment at the hands of Burkhead, her complaints to management, and the reasons for discharge. In essence, Flippen's case is a contest of credibility. Impeachment evidence offered by either side could easily determine the outcome. Flippen's recent conviction for theft of government funds, resting as it did on a stipulation to fraudulent conduct, would be admissible for impeachment under Fed. R. Evid. 609(a)(2). An affirmative answer to the interrogatory relating to the arrest or the criminal charges would almost certainly have led to the discovery of the conviction. The Court therefore finds that Flippen answered the interrogatory falsely in a willful and bad faith attempt to avoid this outcome, which would have been all but fatal to her case.

## II.   Conclusions of Law

Ashland Arms's motion invokes the Court's inherent power to sanction parties for bad faith conduct, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991), and its power to issue discovery sanctions for failure to disclose under Rule 37(c)(1). *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Before imposing the "harsh sanction" of dismissal on either basis, it is necessary to consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their

1  merits; and (5) the availability of less drastic sanctions." *Id.* (quoting *Anheuser-Busch, Inc.
2  v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).  A finding of willfulness, fault,
3  or bad faith is required for dismissal to be proper.  *Id.*

4        In this case, and in light of the finding of willful bad faith, all five factors favor
5  dismissal of the suit.  The enforcement of good faith in discovery serves judicial economy
6  and the public's interest in expeditious resolution of litigation because the willful
7  concealment of relevant evidence threatens the integrity and efficiency of every judicial
8  proceeding. The party seeking sanctions, in this case Ashland Arms, faced a substantial risk
9  of prejudice from Flippen's conduct as already explained above.  And although public policy
10 favors disposition of cases on their merits, the successful concealment of Flippen's arrest and
11 conviction would have undermined the legitimacy of that very prospect.  Finally, the Court
12 has determined that no less drastic sanction will suffice.  To preclude Flippen's own
13 testimony would doom her chances of success at trial and impose needless litigation costs
14 on Ashland Arms.  As Flippen's counsel conceded, monetary sanctions are unlikely to be
15 paid.

16       IT IS THEREFORE ORDERED THAT Defendant's Motion for Discovery Sanctions
17 (doc. # 53) is granted.  The complaint is dismissed as sanction for discovery misconduct.
18 The clerk shall enter judgment dismissing this action with prejudice and shall terminate the
19 case.

20       DATED this 14th day of May, 2009.

                                                        */s/ Neil V. Wake*
                                                         Neil V. Wake
                                             United States District Judge